2022 IL App (1st) 210339-U

FOURTH DIVISION
March 31, 2022

No. 1-21-0339

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE APPELLATE COURT
OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| SUSAN PIERCE, Individually and as Wife and Next Friend of CRAIG F. PIERCE, a Disabled Person, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Respondent, | ) ) | |
| v. | ) ) | No. 20 L 1591 |
| SUDHA CHERUKURI, M.D., FRESENIUS HEALTH PARTNERS, INC., FRESENIUS USA MANUFACTURING, INC., FRESENIUS MEDICAL CARE OF ILLINOIS, LLC, FRESENIUS KIDNEY CARE, FRESENIUS KIDNEY CARE MACOMB, FRESENIUS MEDICAL CARE, FRESENIUS MEDICAL CARE MACOMB, FRESENIUS MEDICAL CARE HOLDINGS, INC., NATIONAL MEDICAL CARE, INC., ILLINOIS KIDNEY DISEASE & HYPERTENSION CENTER, RENALCARE ASSOCIATES, S.C., and RENAL INTERVENTION CENTER, L.L.C., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Honorable Kathy M. Flanagan, Judge Presiding. |
| Defendants-Petitioners. | ) | |

_____

PRESIDING JUSTICE REYES delivered the judgment of the court.
Justices Lampkin and Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Affirming the circuit court's denial of defendants' motions to

transfer pursuant to *forum non conveniens* where the circuit court did not abuse its discretion in finding that defendants failed to demonstrate that the balance of relevant interest factors strongly favored transfer.

¶ 2    Plaintiff Susan Pierce, individually and as next friend of her husband, Craig F. Pierce (Craig), brought an action for medical malpractice in the circuit court of Cook County. Defendants Fresenius Health Partners, Inc., Fresenius USA Manufacturing, Inc., Fresenius Medical Care of Illinois, LLC, Fresenius Kidney Care, Fresenius Kidney Care Macomb, Fresenius Medical Care, Fresenius Medical Care Macomb, and Fresenius Medical Care Holdings, Inc. (the Fresenius Defendants) filed a motion to transfer plaintiff's action to the circuit court of McDonough County pursuant to the doctrine of *forum non conveniens* and Illinois Supreme Court Rule 187 (eff. Jan. 1, 2018). Defendants Sudha Cherukuri, M.D., Renalcare Associates, S.C., Illinois Kidney Disease & Hypertension Center, and Renal Intervention Center, L.L.C., filed a similar motion to transfer under the doctrine of *forum non conveniens*, which also joined and adopted the arguments in the Fresenius Defendants' motion. The circuit court denied both motions.

¶ 3    On permissive interlocutory appeal pursuant to Illinois Supreme Court Rule 306(a)(2), defendants contend that the circuit court abused its discretion in denying their motions to transfer the cause from Cook County to McDonough County, Illinois. Specifically, defendants maintain that the circuit court accorded too much deference to plaintiff's choice of forum and failed to properly weigh the public and private interest factors, which defendants argue strongly favor transfer to McDonough County. For the following reasons, we affirm.

¶ 4                          BACKGROUND

¶ 5    In early 2016, Craig began receiving medical treatment for atrial fibrillation. From February 28, 2016, through March 14, 2016, he received inpatient care at OSF Saint Francis

Medical Center[1] which is located in Peoria County. After he was discharged, he commenced receiving dialysis treatment from defendants. Between March 14, 2016, and April 13, 2016, Craig received medical care from defendants in McDonough County and Knox County. The parties dispute the facts regarding the care which Craig received at that time. Plaintiff contends that on April 13, Craig suffered a stroke due to defendants' negligent care which significantly reduced his physical and mental capabilities and left him unable to care for himself. Thereafter, Plaintiff filed her complaint, and subsequently amended the complaint, in the circuit court of Cook County. Both the complaint and the amended complaint included a claim for institutional negligence against the Fresenius Defendants.

¶ 6      The parties then proceeded to engage in written discovery. Pursuant to Illinois Supreme Court Rule 213 (eff. Jan. 1, 2018), plaintiff and defendants, in response to the other's interrogatories, collectively disclosed 70 potential witnesses. Six of these witnesses either worked or resided in McDonough County, fourteen of these witnesses either worked or resided in Peoria County, forty-four of these witnesses worked in Cook County, one witness resided in DuPage County, one witness resided in Kane County, one witness worked in Fulton County, two witnesses resided out of state, and the location of one witness[2] was not disclosed.

¶ 7      Defendants filed their motions to transfer venue pursuant to the doctrine of *forum non conveniens*.  In their motions, defendants argued that the complained of medical care occurred in and around McDonough County, that plaintiff and Craig resided in McDonough County, and that many of the witnesses also resided near McDonough County. As to the private interest factors,

---

[1] "OSF" is an initialism for "Order of Saint Francis." The hospital, however, is known as "OSF Saint Francis Medical Center."

[2] Curtis Pierce's location was not disclosed.

defendants argued that McDonough County was more convenient for the parties and the disclosed potential witnesses. Thus, McDonough County was also an easier, more expeditious, and less expensive forum to conduct a trial. As to the public interest factors, defendants argued that the litigation had no material connection to Cook County where plaintiff, a McDonough County resident, was suing for alleged negligent acts to Craig, a McDonough County resident, occurring in McDonough County. Accordingly, defendants asserted that this matter was a purely local controversy that should be decided locally in McDonough County and that the citizens of Cook County should not be burdened with the costs of litigation and jury duty. In addition, defendants noted that the Cook County court docket is more congested than that of McDonough County. Defendants concluded that a balancing of the private and public interest factors strongly favored transferring the case and that McDonough County was the appropriate forum in which to try plaintiff's case.

¶ 8 In support of their motions, defendants appended affidavits from several of the witnesses who each stated that they had relevant evidence to provide in this case and that McDonough County would be a more convenient venue for them. Dr. Cherukuri, in her affidavit, asserted that in March and April 2016 her residence and primary office were in Knox County. Her residence and primary office, however, are now located in Peoria County. Dr. Cherukuri accordingly would only have to travel 70 miles to testify in McDonough County but 150 miles if she had to testify in Cook County. Registered nurses Alicia Palm and Judy Walters each submitted separate affidavits where they each averred that the McDonough County courthouse was less than half of a mile away from where they worked and that they would need to travel approximately 500 miles round trip to testify in Cook County. Judith Dansizen, an advanced practice nurse, in her affidavit stated that she resided in Peoria County and that she would only need to travel 60 miles

to testify in McDonough County but would have to travel 176 miles to testify in Cook County. Timothy Pflederer, M.D., set forth in his affidavit that his residence and primary office were in Peoria County and that he would only need to travel 60 miles to testify in McDonough County but 160 miles to testify in Cook County.

¶ 9    Defendants also attached a statistical report published by the Administrative Office of the Illinois Courts, which showed that in 2019, there were 336 cases in Cook County in which jury verdicts over $50,000 were rendered, as compared to only one such case in McDonough County. The report also established that the average duration of each case from filing to verdict in Cook County was 29.9 months, compared to 33.1 months in McDonough County.

¶ 10    Plaintiff filed a combined response to defendants' motions to transfer venue. Plaintiff argued that her choice of venue was proper as the Fresenius Defendants are Cook County residents, who treat thousands of patients within Cook County and maintain at least 76 dialysis centers within 25 miles of the Daley Center in Cook County. Plaintiff also referenced Craig's admission at the Shirley Ryan AbilityLab in Cook County, where he received care following his stroke from doctors and therapists who are also potential witnesses in the case. Further, plaintiff argued that the trial witnesses for this case were spread across several counties within Illinois and some witnesses are from out of state therefore no county represented an ideal venue for trial. Finally, plaintiff asserted that defendants had failed to meet their burden to demonstrate that the public and private factors strongly favored transferring the case.

¶ 11    Attached to plaintiff's response was a document demonstrating that the Fresenius Defendants operate 76 facilities within 25 miles of the Daley Center in Cook County and operate over 55 facilities within Cook County.

¶ 12    Without holding argument, the circuit court denied defendants' motions. In its written

decision, the circuit court found that defendants had not met their burden to demonstrate that the balance of private and public interests strongly favored transfer to McDonough County. Regarding the ease of access to evidence and convenience to the parties, the circuit court noted that defendants had identified witnesses across Peoria, McDonough, and Fulton Counties, and that the record indicated the participation of witnesses from DuPage and Kane Counties as well as witnesses from out of state. The circuit court also noted the likely testimony of Fresenius employees from Cook County or out of state and that plaintiff intended to present evidence of treatment that occurred in Cook County following Craig's stroke. The circuit court, however, did not accord much weight to the location of the Cook County treatment facilities identified by plaintiff. The circuit court thus found that there was no county that has a dominant connection to the sources of proof.

¶ 13     The circuit court also acknowledged the affidavits which were submitted by the defendants wherein each witness asserted that they would need to travel further and take more time away from their work if the trial were held in Cook County. The circuit court, however, found that these witnesses would miss time away from their professional obligations regardless of where the trial was held. The circuit court also pointed to the ongoing COVID-19 pandemic as likely enabling the use of technologies that might promote both safety and convenience, like videotaped testimony. Ultimately, the circuit court concluded that defendants had failed to demonstrate that this interest factor weighed in favor of transfer.

¶ 14     For similar reasons, the circuit court also concluded that the cost of obtaining testimony from willing witnesses did not weigh in favor of transfer. Again, citing the COVID-19 pandemic, the circuit court stated that videotaped evidence depositions or other remote means of collecting testimony were likely to affect discovery in this case. As a result, neither Cook nor McDonough

County provided an advantage. Additionally, the practical concerns regarding distance and time that defendants raised in their motions were not found to heavily favor transfer since the same challenges associated with the COVID-19 pandemic would delay the case's progress in either Cook or McDonough County. The circuit court did find that the possibility of the jury viewing the scene weighed in favor of transfer while noting that such viewing was unlikely.

¶ 15    The circuit court found that Cook County courts were more congested but more efficiently disposed of cases over $50,000, and therefore, this factor weighed, "albeit not strongly," in favor of transfer. The circuit court also found that the local interest in resolving the dispute weighed in favor of transfer, though the court qualified its finding by noting that the Fresenius Defendants operate in Cook County as well as McDonough County and that Craig came to Cook County for subsequent treatment. Thus, the circuit court found that Cook County had an interest in the dispute as well, and therefore, that this factor weighed in favor, but not strongly in favor, of transfer. For this same reason, the circuit court found that the fairness in burdening the citizens of Cook County with jury duty weighed in favor, but not strongly in favor, of transfer. Weighing all these factors and noting that plaintiff's choice of forum was entitled to some deference where neither plaintiff nor Craig were Cook County residents, the circuit court concluded that the balance of factors did not strongly favor transfer and denied defendants' motions.

¶ 16    Thereafter, defendants filed in this court a petition for leave to appeal with this court pursuant to Rule 306(a)(2). We granted the petition, and this appeal follows.

¶ 17                                    ANALYSIS

¶ 18    On appeal, defendants contend that the circuit court abused its discretion in denying their motion to transfer the cause from Cook County to McDonough County, Illinois. Specifically,

defendants maintain that the circuit court accorded too much deference to plaintiff's choice of forum and failed to properly weigh the public and private interest factors, which they argue strongly favor transfer to McDonough County. For the following reasons, we affirm.

¶ 19                                    Standard of Review

¶ 20    The determination of a *forum non conveniens* motion lies within the sound discretion of the circuit court. *Langenhorst v. Norfolk Southern Ry. Co.,* 219 Ill. 2d 430, 442 (2006). On review, the circuit court's determination will be reversed only if it can be shown that the court abused its discretion in balancing the relevant factors. *Id.* The "abuse of discretion" standard of review is the most deferential standard of review. *In re D.T.*, 212 Ill. 2d 347, 356 (2004). Consequently, it is "traditionally reserved for decisions made by a trial judge in overseeing his or her courtroom or in maintaining the progress of a trial." *Id.* When an abuse of discretion standard is applicable, the actions of the trial court will not be disturbed on appeal unless they are "clearly against logic." *Miranda v. Walsh Group, Ltd.*, 2013 IL App (1st) 122674, ¶ 16. In such an instance, the question is not whether the reviewing court agrees with the action taken by the trial court, but whether the trial court "acted arbitrarily, without employing conscientious judgment, or whether, in view of all of the circumstances, the court exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted." *State Farm Fire & Casualty Co. v. Leverton*, 314 Ill. App. 3d 1080, 1083 (2000); see *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 177 (2003). We will turn to the record to consider whether such an abuse occurred, but first we set forth the controlling principles related to the doctrine of *forum non conveniens*.

¶ 21                        *Forum Non Conveniens*: Controlling Principles

¶ 22    The Illinois venue statute provides: "every action must be commenced (1) in the county

of residence of any defendant who is joined in good faith and with probable cause for the purpose of obtaining a judgment against him or her and not solely for the purpose of fixing venue in that county, or (2) in the county in which the transaction or some part thereof occurred out of which the cause of action arose." 735 ILCS 5/2-101 (West 2020). The doctrine of *forum non conveniens* assumes that there is more than one forum with the power to hear the case. *Gridley v. State Farm Automobile Insurance Co.*, 217 Ill. 2d 158, 169 (2005). If there exists more than one potential forum, the equitable doctrine of *forum non conveniens* may be invoked to determine the most appropriate forum. *Dawdy*, 207 Ill. 2d at 171; *Fennell v. Illinois Central R.R. Co.*, 2012 IL 113812, ¶ 12. The doctrine of *forum non conveniens* is an equitable doctrine based on considerations of fundamental fairness and the sensible, effective administration of justice. *Fennell*, 2012 IL 113812, ¶ 14. The doctrine allows the circuit court in which the action was filed to decline jurisdiction and direct the lawsuit to an alternative forum that the circuit court determines can better serve the convenience of the parties and the ends of justice. *Vinson v. Allstate*, 144 Ill. 2d 306, 310 (1991). The doctrine may also be applied intrastate, or where the choice is between two forums in the same state. *Fennell*, 2012 IL 113812, ¶ 13; see *Kwasniewski v. Schaid*, 153 Ill. 2d 550, 553-54 (1992) (in an intrastate case, a plaintiff's "home forum" is the plaintiff's home county).

¶ 23     Each case, however, is unique and must be considered on its own facts. *Fennell*, 2012 IL 113812, ¶ 21. In determining whether the doctrine of *forum non conveniens* applies, the circuit court conducts an unequal balancing test to determine whether the plaintiff's chosen forum prevails. *Taylor v. Lemans Corp.*, 2013 IL App (1st) 130033, ¶ 15. Under an unequal balancing test, the balance of factors must strongly favor transfer before the plaintiff can be deprived of his or her chosen forum. *Id.* The circuit court does not weigh the private interest factors against the

public interest factors. *First American Bank v. Guerine*, 198 Ill. 2d 511, 518 (2002). Rather, the circuit court must evaluate the total circumstances of the case in determining whether the balance of factors strongly favors transfer. *Id.* The private interest factors include: (1) convenience of the parties; (2) the relative ease of access to sources of testimonial, documentary, and real evidence; (3) the availability of compulsory process to secure attendance of unwilling witnesses; (4) the cost to obtain attendance of willing witnesses; (5) the possibility of viewing the premises, if appropriate; and (6) all other practical considerations that make a trial easy, expeditious, and inexpensive. *Fennell*, 2012 IL 113812, ¶ 15. The public interest factors include: (1) the administrative difficulties caused when litigation is handled in congested venues; (2) the unfairness of imposing jury duty upon residents of a community with no connection to the litigation; and (3) the interests of having local controversies decided locally. *Id.* ¶ 16. "The defendant bears the burden of showing that the relevant private and public interest factors 'strongly favor' defendant's choice of forum." *Taylor*, 2013 IL App (1st) 130033, ¶ 16 (quoting *Langenhorst*, 219 Ill. 2d at 444). The defendant, however, cannot assert that the plaintiff's chosen forum is inconvenient to the plaintiff. *Whirlpool Corp. v. Certain Underwriters at Lloyd's London*, 295 Ill. App. 3d 828, 837 (1998).

¶ 24    In addition, while courts acknowledge that plaintiffs may forum shop, courts may not consider this practice in a *forum non conveniens* analysis. "By itself, forum shopping 'furnishes no legal reason for sustaining' a plaintiff's choice of forum." *Dawdy*, 207 Ill. 2d at 175 (quoting *Pruitt Tool & Supply Co. v. Windham*, 379 P.2d 849, 850 (Okla. 1963)).

¶ 25                            Deference to Plaintiff's Chosen Forum

¶ 26    Defendants first contend that the circuit court abused its discretion by extending impermissible deference to plaintiff's choice of forum. Generally, the plaintiff's choice of forum

should rarely be disturbed, as the plaintiff has a substantial interest in choosing the forum where his or her rights will be vindicated. *Guerine*, 198 Ill. 2d at 517. The plaintiff's choice, however, is not entitled to the same weight in all circumstances, and when the plaintiff selects a different forum from his or her home or the site of the accident, the choice is afforded only some deference. *Id.* In other words, the deference to be accorded is only *less*, as opposed to *none*. *Elling v. State Farm Mutual Automobile Insurance Co.*, 291 Ill. App. 3d 311, 318 (1997).

¶ 27    In this case, the circuit court found that "neither the [p]laintiff nor the patient are Cook County residents, and therefore the choice of forum is entitled to less deference." Defendants argue, however, that despite making this finding, the circuit court extended too much deference to plaintiff's choice of forum. Defendants argue that plaintiff's choice of forum was actually due "considerably less deference" or "far less deference," relying on *Schuster v. Richards*, 2018 IL App (1st) 171558, and *Fennell v. Illinois Central R.R. Co.*, 2012 IL 113812.

¶ 28    We disagree with defendants' interpretation of these cases. In *Fennell*, our supreme court found the plaintiff's choice of forum to be owed "*far* less deference" where that plaintiff had initially filed suit in the foreign forum before voluntarily dismissing the suit and refiling in Illinois. (Emphasis in original.) *Fennell*, 2012 IL 113812, ¶¶ 25-26. On that basis, our supreme court characterized Illinois as "plaintiff's *second* choice of forum" as the plaintiff in *Fennell* had already demonstrated his willingness to bring suit in either forum with his initial filing. (Emphasis in original.) *Id.* ¶ 25. That fact is not present in this case, as plaintiff here has only filed her complaint in Cook County. Therefore, based on *Fennell*, we cannot say that the circuit court abused its discretion when it found that her chosen forum was entitled to less deference.

¶ 29    Defendants also rely on *Schuster*, where the reviewing court found that the plaintiff's choice of a non-resident, offsite forum was due "considerably less deference." *Schuster*, 2018 IL

App (1st) 171558, ¶ 21. The *Schuster* court, however, did not indicate that it intended to impose a different level of deference than is typically extended. The choice of words used by the *Schuster* court appears to be merely semantics where, in the same paragraph, it describes the plaintiff's choice as being entitled to "some deference." *Id.* On this point, *Schuster* cites *Ruch v. Padgett*, 2015 IL App (1st) 142972, ¶ 45, which characterizes the deference due to a plaintiff's choice merely as "less." In turn, *Ruch* cites *Glass v. DOT Transportation, Inc.*, 393 Ill. App. 3d 829, 834 (2009), where the court describes the level of deference as being "somewhat less." These precedents indicate that a plaintiff's choice of a non-resident, offsite forum is due less deference than if the plaintiff had chosen his or her home forum or the forum where the harm occurred. See *Schuster*, 2018 IL App (1st) 171558, ¶ 21; *Ruch*, 2015 IL App (1st) 142972, ¶ 45; *Glass*, 393 Ill. App. 3d at 834. This is the same conclusion that the circuit court drew in its decision. Therefore, we cannot say that the circuit court abused its discretion by extending too much deference to plaintiff's choice of forum.

¶ 30    Defendants' final argument regarding deference is that the circuit court abused its discretion by addressing deference at the end of its analysis. Defendants argue that the discretion due to plaintiff's choice of forum is a threshold inquiry to be conducted prior to analysis of the private and public interest factors. See *Ruch*, 2015 IL App (1st) 142972, ¶ 42 ("Before weighing the relevant factors, a court must decide how much weight to give to a plaintiff's choice of forum.").

¶ 31    Defendants are correct that the determination of deference typically occurs prior to the circuit court balancing the public and private interest factors. Defendants, however, do not cite any case, nor could we find one, where it was held that a circuit court abused its discretion by performing this analysis out of order in a written opinion. Rather, in *Dawdy*, our supreme court

stated that "deference to plaintiff's choice of forum is but one factor, along with other relevant private and public interest factors, to be considered in the balancing process." *Dawdy*, 207 Ill. 2d at 175 (quoting *Griffith v. Mitsubishi Aircraft International, Inc.*, 136 Ill. 2d 101, 107-08 (2003)). The *forum non conveniens* analysis requires the circuit court to evaluate the totality of the circumstances, including the deference due to plaintiff's choice. Thus, we cannot say that the court abused its discretion by considering deference at the end of its analysis.

¶ 32                          The Private Interest Factors

¶ 33     We next turn to examine the private interest factors. The first private interest factor is the convenience of the parties. *Langenhorst*, 219 Ill. 2d at 444. Defendants argue that that McDonough County is substantially more convenient. We acknowledge that defendant Dr. Cherukuri resides in Peoria County, her main office is in Peoria County, and she would need to travel 80 more miles to appear in Cook County compared to McDonough County. We note, however, that the Fresenius Defendants operate 76 facilities within 25 miles of the Daley Center in Cook County and that they are residents of Cook County since they operate over 55 facilities within the county. See *Langenhorst*, 219 Ill. 2d at 430. Further, although plaintiff resides in McDonough County, defendants may not assert that plaintiff's chosen forum is inconvenient to plaintiff. *Guerine*, 198 Ill. 2d at 518. In addition, a defendant seeking transfer must demonstrate that a defendant's choice of forum is substantially more appropriate. *Czarnecki v. Uno-Ven Co.*, 339 Ill. App. 3d 504, 508 (2003). Since defendants may not assert that plaintiff's chosen forum is inconvenient to plaintiff, and since the majority of defendants reside in Cook County, we cannot say that the circuit court abused its discretion in finding that defendants failed to demonstrate that McDonough County is substantially more appropriate for all parties. See *Langenhorst*, 219 Ill. 2d at 430; *Guerine*, 198 Ill. 2d at 518; *Czarnecki*, 339 Ill. App. 3d at 508.

¶ 34    We now turn to the second private interest factor—the relative ease of access to sources of testimonial and documentary evidence. In addition to Dr. Cherukuri's affidavit, defendants presented four affidavits from witnesses asserting that McDonough County was a more convenient forum than Cook County. Two of these affidavits were from registered nurses Alicia Palm and Judy Walters, who averred that they worked less than half of a mile away from the McDonough County courthouse but would have to travel approximately 500 miles round trip to testify in Cook County. Another affidavit was from advanced practice nurse Judith Dansizen, who asserted that she resided in Peoria County and would only need to travel 60 miles to testify in McDonough County but 176 miles to testify in Cook County. The final affidavit was from Dr. Pflederer, who testified that his residence and primary office were in Peoria County and that he would only need to travel 60 miles to testify in McDonough County but 160 miles to testify in Cook County.

¶ 35    We acknowledge defendants' affidavits; however, we also note that both parties disclosed 70 witnesses, including the affiants listed above, who either resided or worked in several different counties: six of these witnesses either worked or resided in McDonough County, fourteen worked or resided in Peoria County, forty-four worked in Cook County, one resided in DuPage County, one resided in Kane County, one worked in Fulton County, two resided out of state, and the location of one witness was not disclosed. Therefore, we find that the witnesses' connections are not predominant in any forum. See *Quaid v. Baxter Healthcare Corp.*, 392 Ill. App. 3d 757, 768 (2009) ("[W]hen potential witnesses are scattered among different forums, none enjoys a predominant connection to the litigation.").

¶ 36    In addition, any documentary evidence, such as medical records, are now provided in an electronic format that can be easily distributed to the parties. See *Koss Corp. v. Sachdeva*, 2012

IL App (1st) 120379, ¶ 128. As the documents can be easily produced in either Cook County or McDonough County, we find that this fact does not weigh in favor of transfer. See *Ammerman v. Raymond Corp.*, 379 Ill. App. 3d 878, 890 (2008) ("the location of documentary evidence has become less significant because today's technology allows documents to be copied and transported easily and inexpensively.")

¶ 37    Therefore, the circuit court did not abuse its discretion in finding that defendants failed to demonstrate that the relative ease of access to sources of testimonial and documentary evidence weighs in favor of transfer.

¶ 38    In reaching this conclusion, we have considered the cases which defendants cite for the proposition that the relative ease of access to sources of testimonial and documentary evidence weighs in favor of transfer. First, defendants cite *Kuhn v. Nicol*, 2020 IL App (5th) 190225. In *Kuhn*, the plaintiffs were two residents of Clinton County, and they brought suit alleging that defendants' medical malpractice in Clinton County caused a debilitating injury to one of the plaintiffs. *Id.* ¶¶ 3-4. The plaintiffs, however, brought suit in St. Clair County, and the defendants moved to transfer the action to Clinton County based on *forum non conveniens*. *Id.* ¶ 3. In opposition to the motion, the plaintiffs filed an affidavit from the plaintiffs' counsel averring those medical providers were treating the plaintiff's injury in St. Clair County and listing 25 lay witnesses from St. Clair County "who would have relevant information about [the] plaintiff's condition." *Id.* ¶ 5. The circuit court subsequently denied the defendants' motion. *Id.* ¶ 6. Then, in finding that the circuit court abused its discretion, the reviewing court asserted that it would not give undue weight to the fact that the plaintiff was being treated in St. Clair County. *Id.* ¶ 13. The reviewing court also did not accord much weight to "plaintiffs' counsel's list of 25 lay witnesses who are acquainted with [the plaintiff], especially where counsel does not provide an

explanation of why there are not lay witnesses in Clinton County, *** who could provide identical testimony." *Id.*

¶ 39     We find *Kuhn* distinguishable from the case at bar. First, unlike *Kuhn*, the record demonstrates that the plaintiff intends to call family members from different counties and states to testify; these lay witnesses are not mere acquaintances like those in *Kuhn*. See *id.* Plaintiff, for example, intends to call as a witness Cary Pierce, Craig's twin brother from DuPage County and someone who would most likely provide unique testimony. See *id.* Additionally, unlike the plaintiffs in *Kuhn*, plaintiff here did not only provide post-injury witnesses residing in different counties; both parties, for example, provided several witnesses from OSF Saint Francis Medical Center, which treated Craig prior to his injury. See *id.* Finally, the circuit court here expressly found that the location of plaintiff's post-occurrence treatment providers was not accorded much weight.

¶ 40     Defendants also cite *Bruce v. Atadero*, 405 Ill. App. 3d 318 (2010), for its contention that the circuit court abused its discretion in finding that the witnesses did not predominate in any venue. In *Atadero*, the administrator of the decedent's estate brought suit against defendants for negligence occurring in McHenry County. *Id.* at 320. During circuit court proceedings, the plaintiff presented over 10 loss-of-society witnesses who resided in Cook County, Kane County, and Indiana. *Id.* at 321. Thereafter, the plaintiff refiled in Cook County after the case was pending for two years, and the defendants moved to transfer the case back to McHenry County pursuant to *forum non conveniens*. *Id.* The circuit court subsequently denied the defendants' motion. *Id.* In finding that the circuit court abused its discretion, the court in *Atadero* asserted "[t]he fact that several, perhaps cumulative, damage witnesses reside across several counties simply does not weigh in favor of plaintiff's choice ***." *Id.* at 326. The court then asserted that

"[t]his is especially true considering that plaintiff's residence is *** not in Cook County, her newly chosen forum, and the wrongful acts and omissions alleged all occurred in McHenry County, the forum of [the plaintiff's] original choice." *Id.*

¶ 41 We find that *Atadero* is also distinguishable. In the case at bar, the witnesses residing or working in different counties are not merely "cumulative damage witnesses"; for example, there are several witnesses from Fulton County or Peoria County who are expected to testify about liability and causation. See *id.* Moreover, the record demonstrates that the alleged wrongful acts and omissions in this case occurred in multiple counties, McDonough and Knox Counties, and that unlike in *Atadero*, plaintiff in this case never refiled her case in a different county. See *id.* Thus, we find that defendants' contentions fail.

¶ 42 The third private interest factor—the availability of compulsory process to secure attendance of unwilling witnesses—is neutral. As the majority of the witnesses identified hail from Illinois, compulsory process is available in either Cook or McDonough County. See *Bird v. Luhr Bros., Inc.*, 334 Ill. App. 3d 1088, 1094 (2002). Further, neither party has suggested that the out-of-state witnesses might be unwilling to testify. See *Benedict v. Abbott Laboratories, Inc.*, 2018 IL App (1st) 180377, ¶ 45. Therefore, we find that the circuit court did not abuse its discretion in finding that this factor did not weigh in favor of transfer.

¶ 43 We next address the fourth private interest factor—the cost to obtain attendance of the willing witnesses. The alleged negligence occurred in McDonough County. The cost to obtain deposition testimony will be the same whether the case proceeds in Cook or McDonough County. Defendants presented five affidavits in which each witness asserted that they would bear significant costs regarding their appearing for trial in Cook County, including missing time from work and the costs of travel. However, as stated above, there are more witnesses anticipated to

participate in this case, including out-of-state witnesses. It is defendants' burden to demonstrate that McDonough County represents a significant savings with regard to the attendance of willing witnesses. See *Langenhorst*, 219 Ill. 2d at 444. Here, the circuit court did not find that this factor weighed in favor of transfer, and we do not find that decision to be an abuse of discretion.

¶ 44 The fifth private interest factor is the possibility of a jury viewing the premises. Because there is a possibility of a jury viewing the premises, we agree with the circuit court that this factor weighs in favor of transfer, although we also agree that a jury viewing of the scene would be unlikely. See *Dawdy*, 207 Ill. 2d at 178-79.

¶ 45 The sixth private interest factor—other practical considerations, making trial easy, expeditious, and less expensive—is neutral and does not favor transfer. Defendants argue that the cost of bringing witnesses to Cook County is significantly higher than the cost of bringing witnesses to McDonough County. Besides the affidavits, which we have already discussed, defendants present no further evidence supporting this claim. The circuit court did not find that there were any practical considerations that merited special attention and weighed in favor of transfer to McDonough County. We do not find that the circuit court abused its discretion with regard to this factor.

¶ 46 Defendants argue that the circuit court abused its discretion by speculating about the COVID-19 pandemic in its analysis of the parties' and the witnesses' convenience. While we agree with defendants that there is nothing in the record to support the circuit court's comments, we do not believe that these comments played a significant role in the circuit court's analysis of these factors. We may affirm the circuit court's *forum non conveniens* decision on any basis found in the record, and based on our review, we have found a sufficient basis for the circuit court to conclude that transfer to McDonough County was not warranted without analyzing the

effects of the COVID-19 pandemic. *Benedict*, 2018 IL App (1st) 180377, ¶ 30; see also *Bell v. Louisville & Nashville R.R. Co.*, 106 Ill. 2d 135, 148 (1985).

¶ 47    We therefore conclude that the circuit court did not abuse its discretion while balancing the private interest factors.

¶ 48                                    The Public Interest Factors

¶ 49    Finally, defendants argue that the circuit court abused its discretion by finding that all three public interest factors weighed in favor, rather than strongly in favor, of transfer to McDonough County. We conclude that the circuit court did not abuse its discretion regarding any of the three public interest factors.

¶ 50    The first public interest factor is the administrative difficulties caused when litigation is handled in congested venues. Accompanying their motion to transfer, defendants attached the 2019 Annual Report of Illinois Courts, which documented the civil circuit court caseload. Our supreme court has found that this annual report is a proper source of reference in assessing court congestion; therefore, we will rely on this data in our analysis. See *Washington v. Illinois Power Co.*, 144 Ill. 2d 395, 403 (1991). The parties both agree that this report indicates that Cook County is more congested than McDonough County and that the circuit court appropriately examined these statistics when it determined that it favored McDonough County. Defendants contend that the circuit court should have given this factor greater weight. However, in deciding a *forum non conveniens* motion, a court must consider all of the relevant factors, without emphasizing any one factor. *Langenhorst*, 219 Ill. 2d at 443. We find the circuit court did not abuse its discretion when it found that this factor weighs in favor of a transfer to McDonough County.

¶ 51    We now turn to address the second public interest factor, the interest in deciding local

disputes locally. The circuit court found that this factor weighed in favor of transfer to McDonough County. Defendants contend that the circuit court erred in failing to find that transfer was strongly warranted based on McDonough County's interest in the litigation.

¶ 52    The alleged negligence in this case occurred in McDonough and Knox County. Moreover, the Fresenius Defendants maintain over 55 facilities offering dialysis care throughout Cook County. Since these defendants have offered medical care to Cook County residents, Cook County has an interest in the litigation. See *Hackl v. Advocate Health & Hospitals Corp.*, 382 Ill. App. 3d 442, 452 (2008); see also *Gundlach v. Lind*, 353 Ill. App. 3d 677, 683 (2004). Therefore, we find that the circuit court did not abuse its discretion to conclude that this factor favored, rather than strongly favored, transfer to McDonough County.

¶ 53    Defendants rely on *Vinson v. Allstate*, 144 Ill. 2d 306, 311 (1991), to argue that "merely conducting business in [a] County does not affect the *forum non conveniens* issue." Contrary to defendants' contentions, the Fresenius Defendants are not "merely conducting business" in Cook County. See *Vinson*, 144 Ill. 2d at 311. As stated above, by operating dialysis clinics, they are also offering medical care to the people of Cook County, and the county therefore has an interest in the litigation. See *Hackl*, 382 Ill. App. 3d at 452; see also *Gundlach*, 353 Ill. App. 3d at 683.

¶ 54    In addition, defendants cite *Kuhn v. Nicol*, 2020 IL App (5th) 190225, for the proposition that the Fresenius Defendants' contacts in Cook County are insignificant. In *Kuhn*, the plaintiffs on appeal contended that St. Clair, the county in which they filed suit, had an interest in the litigation because one of the defendants had a registered agent in the county and another defendant did business in the county. *Kuhn*, 2020 IL App (5th) 190225, ¶ 17. The reviewing court rejected the plaintiffs' contention, finding that "any business transactions that are unrelated to the instant case are insignificant for the purposes of *forum non conveniens*. *Id.* In this case,

however, the Fresenius Defendants' contacts are significantly greater than the *Kuhn* defendants' contacts. The Fresenius Defendants do not have only one registered agent, and as stated above, they are not "merely doing business"; they operate over 55 facilities in Cook County.[3] See *id.* Therefore, we find that *Kuhn* is inapplicable and that the Fresenius Defendants' contacts are sufficient to provide Cook County an interest in the litigation. See *Hackl*, 382 Ill. App. 3d at 452. We further find that the circuit court reasonably noted Cook County's interest when it analyzed this factor.

¶ 55    Finally, as to the third public interest factor, the unfairness of imposing jury duty upon a community with no connection to the litigation, the circuit court similarly found the factor favored transfer to McDonough County, though not strongly. We, however, find that the circuit court did not abuse its discretion in making this determination since the court correctly noted Cook County's interest in the litigation.

¶ 56    Thus, we conclude that the circuit court did not abuse its discretion in finding that defendants failed to demonstrate that the balance of relevant interest factors strongly favored transfer. It is conceivable that, on these facts, a different conclusion could be reached. Yet our duty is not to reweigh the private and public interest factors ourselves, but to determine whether the circuit court abused its discretion when it denied the motion to transfer. See *Johnson v. Nash*, 2019 IL App (1st) 180840, ¶ 33. The circuit court is thus afforded considerable deference in its

---

[3] In defendants' brief under the statement of facts, defendants note that plaintiff's amended complaint generally alleged the Fresenius Defendants' business contacts in Cook County but did not incorporate these allegations into any specific count. To the extent defendants argue that the circuit court erred in considering these allegations, this argument must fail; plaintiff was not required to repeat these allegations. See Ill. S. Ct. R. 134 (eff. Jan. 1, 1967). Moreover, defendants never presented this argument before the circuit court and have therefore forfeited this argument on appeal. See *Bozek v. Bank of America, N.A.*, 2021 IL App (1st) 191978, ¶ 98.

ruling. *Langenhorst*, 219 Ill. 2d at 441. Based on our review, we cannot say the circuit court's decision was so unreasonable that no court would take its position. Accordingly, the judgment of the circuit court is affirmed.

¶ 57                                CONCLUSION

¶ 58    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 59    Affirmed.